ARKANSAS NATIONAL BANK OF HOT SPRINGS, TRUSTEE *v.* MAYER.

4-9023                    225 S. W. 2d 331

Opinion delivered December 12, 1949.

Rehearing denied January 16, 1950.

*Wootton, Land & Matthews,* for appellant.

*H. A. Tucker* and *C. T. Cotham,* for appellee.

GEORGE ROSE SMITH, J.   Thekla Mayer, a resident of Hot Springs, died in 1921. By her will Mrs. Mayer created a trust and directed that the trust income be used to pay certain annuities (totaling $2,400 a year) to four named nieces and nephews. These payments were made until 1932, but since that year the income has not been sufficient to pay the annuities in full. In 1947 the four beneficiaries brought this action for an interpretation of the will. The chancellor construed the will to mean that the *corpus* of the trust may be invaded whenever the annual income is insufficient to pay the entire $2,400.

To compensate for deficient payments in the past the chancellor gave the appellees judgments totaling $18,170, to be paid from the *corpus,* and directed the trustee to pay the full amounts in the future until the trust terminates either by its terms or by exhaustion of the trust estate. The trustee has appealed.

Mrs. Mayer's will is a fairly long document that need ·not be quoted in its entirety. The bulk of the estate, after the payment of debts and legacies, is bequeathed to the appellant as trustee. Then follow these paragraphs:

"*Item nine.* I direct that said trustee shall keep my estate together and use so much of the income therefrom as may be necessary to carry into effect the following provisions:

"I direct that it pay to each of my nephews and nieces, the children of my brother, Theodore Mayer, an annuity of Six Hundred Dollars ($600) per year; said amounts to be paid to each of them in monthly installments of Fifty ($50) Dollars each and the receipt from said beneficiary shall be sufficient voucher for said trustee.

"The names of said nephews and nieces being Matilda R. Mayer, Fannie Mayer, Leopold Mayer and Simon J. Mayer.

"I further will and direct that said amount shall be paid to my said nieces and nephews above mentioned as set forth as long as said named persons shall live.

"At the death of any one of said beneficiaries, then the amount such person has been receiving under the provisions of this my last will shall be equally divided among the surviving beneficiaries, thus increasing the annuity of such survivors by said amount. This plan shall continue as long as any of said four named persons shall live so that the last of said persons living will receive (at the death of all of the others) the annuity provided by this will, to-wit: the sum of Twenty-Four Hundred ($2,400) Dollars per annum, and when any one or more of them has died the said sum of $2,400 to be

distributed equally among the survivors. Provided, however, that in the event that any one of said four named nieces and nephews shall die leaving a child or children surviving him or her, the proportion which would be paid to the deceased one of them shall be paid to the child or children of such deceased one or to the duly authorized guardian of such child or children and be expended for the use and benefit of such child.

"*Item ten.* At the death of all or the last of my said nieces and nephews mentioned and described in item eight of this my will, I will and direct that said trustee shall divide my estate equally among the children of said nephews and nieces, said children to take *per stirpes* and not per capita, and said property to vest in them absolutely and forever.

"*Item eleven.* I most earnestly request the trustee herein named to care for my brother, Theodore Mayer, who is of unsound mind. Said trustee is to furnish to my said brother any small amount of spending money he may need, any clothing, food or delicacies which he may require for his comfort and pleasure, all of which is left to the discretion and good judgment of said trustee. The amounts thus expended are to be taken from the income of my estate. At the death of my said brother said trustee is to have him properly buried in West Point, Georgia, as is set forth in another item of this will. All the expenditures authorized in this will for my brother Theodore are to be a first charge against my said estate and are to be paid even at the expense of the other legacies and expense authorized herein."

The appellees, in defending the trial court's construction of the will, rely principally upon the characterization of each beneficiary's interest as an "annuity." Authorities are cited to show that an annuity is a fixed sum of money payable periodically, as distinguished from "income" or "profits," which may vary in amount from year to year. We shall not take time to analyze the many cases cited. No court has ever held that the use of the word "annuity" necessarily and invariably authorizes withdrawals from the trust capital to supplement net

income. The use of the term is certainly an indication that the settlor of the trust contemplated a fixed income to the beneficiary, but it is not conclusive. As Professor Bogert has pointed out, the problem is still that of ascertaining the fundamental purpose of the donor. Bogert on Trusts and Trustees, § 813.

As an additional reason for affirmance the appellees rely on the fact that during Mrs. Mayer's lifetime she sent ten dollars a month to Simon Mayer, one of the beneficiaries, who is partially disabled. It is true that this generosity on the part of Mrs. Mayer indicates to some extent a desire to provide for Simon Mayer's support, but again the implication is not conclusive. Item seven of the will gave Simon a life estate in Mrs. Mayer's homestead. As far as the annuities are concerned, he is treated just the same as the other three beneficiaries. It is evident that any especial interest that the testatrix had in Simon's welfare was demonstrated by the life estate in the homestead rather than by the annuity.

Thus there are two intimations, neither of which is decisive, that the testatrix intended to authorize inroads upon the *corpus* to supplement reduced income. When, however, we examine the will for indications of the opposite intention, we find the language so compelling that we have no hesitancy in deciding that the power to make withdrawals from the principal does not exist. There are at least four factors in the testamentary scheme that point unmistakably to this conclusion.

First, the testatrix directed in Item nine that the trustee "shall keep my estate together." This instruction clearly means that the estate is to be kept intact for the duration of the trust. But withdrawals from capital almost inevitably become progressively larger each year, for the income naturally decreases as the principal is diminished. In this case the *corpus* was worth less than $37,000 when this suit was brought. If about half that amount is used to pay the appellees' judgments and the other half with its income is used to make payments of $2,400 a year, it is pretty certain that the estate will be

exhausted within about ten years. Yet the testatrix has directed that her estate be kept together.

Second, in the same sentence in Item nine the testatrix went on to say that the trustee should use "so much of the income . . . as may be necessary" to provide the annuities for her nieces and nephews. The whole annuity plan follows and depends upon the introductory statement that it is to be accomplished by the use of income. Of course this statement could have been qualified by subsequent language authorizing a recourse to principal, but we think that something more than a mere reference to annuities would be needed to broaden the original limitation.

Third, by Item ten a remainder is created in the children of the life beneficiaries. It is significant that this item and the preceding one use the identical phrase; that is, Item nine directs that "my estate" be kept together, while Item ten directs that upon the death of the last life tenant "my estate" be divided among the remaindermen. Together the two clauses establish a unified scheme, but it is a scheme that would be nullified if withdrawals from capital were permitted.

Fourth, by Item eleven the testatrix provided for the support of her insane brother, Theodore, and stated explicitly that his care is to be a first charge against the estate, to be honored even at the expense of the other beneficiaries. The record does not disclose whether Theodore is still alive, but for the purpose of this case it makes no difference. Our task is to determine Mrs. Mayer's intention at the time she executed this will, nearly thirty years ago. Her brother's welfare was her first consideration. Whether he is still alive is immaterial in ascertaining with what intent Mrs. Mayer chose the language of her will. In the absence of any provision directing a modification in the trust upon Theodore's death, we must assume that his sister meant for her original plan to continue for the duration of the trust. Yet, as we have seen, inroads upon the *corpus* would consume the estate within a few years. When the estate is gone Theodore will be—or would be if he had survived

—without any means of support. Thus the result of capital invasions would be to defeat what the testatrix clearly stated to be her primary intention.

We conclude that the chancellor erred in his construction of the will. The decree is accordingly reversed.